# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | | |
|---|---|---|
| **KAYLA MORRIS,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  4:06-CV-4621-RDP** |
| | ) | |
| **CAMBRIDGE GALAHER** | ) | |
| **SETTLEMENTS AND INSURANCE** | ) | |
| **SERVICES, INC., et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

## I.     INTRODUCTION

On November 15, 2006, the court entered an Order staying this litigation pending a decision on Plaintiff Kayla Morris's ("Plaintiff") Motion to Remand to the Circuit Court of Etowah County, Alabama.  (Doc. # 5).  As the court is now prepared to rule on this motion, the stay will be lifted. Plaintiff Motion to Remand to the Circuit Court of Etowah County, Alabama, filed on November 14, 2006, has been fully briefed by the parties and was under submission November 24, 2006.  For the reasons outlined below, the court finds the motion is due to be denied.

## II.    STATEMENT OF FACTS

Plaintiff was involved in a motor vehicle accident which occurred on February 24, 2004 in Etowah County, Alabama.  (Doc. # 1 Ex. A at 2).  A mediation was held at the law office of George Ford, Esquire in Gadsden, Alabama on October 20, 2004.  (Doc. # 1 Ex. A at 2).  The parties entered into a "Settlement Agreement Upon Mediation" ("Mediation Agreement") signed in Mr. Ford's office on Wednesday, October 20, 2004 in Gadsden, Alabama by the settling parties.  (Doc. # 1 Ex. A at 13).  On December 8, 2004, Plaintiff and her attorney executed the "Settlement Agreement and

Release" ("Settlement Agreement") sent to them by Defendants Cambridge Galaher Settlements and Insurance Services, Inc., St. Paul Surplus Lines Insurance Company, and Insurance Company of the State of Pennsylvania ("Defendants").  (Doc. # 1 Ex. A at 14–21).  The Settlement Agreement provided that Plaintiff was to receive $911.20 per month, along with five lump sum payments over the course of forty-five years in graduated amounts, commencing December 1, 2004.  (Doc. # 1 Ex. A at 16, 24).  Before returning the executed Settlement Agreement to Defendants, Plaintiff and her attorney made handwritten omissions and modifications to the original agreement.  (Doc. # 1 Ex. A at 14–21).  Disagreements as to the proper terms and parties of the Settlement Agreement ensued, as the Plaintiff claimed the Mediation Agreement only included a release of claims against the insured entities, Bes. L. Transfer and Rodney Barnes ("Insureds") and did not agree with the language in the Settlement Agreement she believed to be inconsistent with that limitation. Defendants sought to have the original Settlement Agreement returned executed without the modifications.  (Doc. # 1 Ex. A at 22–37).  As a consequence, Defendants have not made any of the $911.20 payments due each month to the Plaintiff under the Mediation Agreement and heretofore unexecuted Settlement Agreement.  (Doc. # 1 Ex. A at 22–37).

Seeking enforcement of the terms of the Mediation Agreement and payment under her version of the Settlement Agreement, Plaintiff filed this action in the Circuit Court of Etowah County, Alabama on September 28, 2006 against Defendants.  (Doc. # 1 Ex. A, Ex. B).  Defendants were served by certified mail on October 10, 2006.  (Doc. # 1 Ex. B).  On November 7, 2006, Defendant Cambridge Galaher Settlements and Insurance Services sought removal of this case to federal court under 28 U.S.C. § 1446, claiming the case could have been brought in this court originally under 28 U.S.C. § 1332.  Defendants St. Paul Surplus Insurance Company and Insurance

2

Company of Pennsylvania each attached a Notice of Joinder in Removal to the Notice of Removal. (Doc. # 1 Ex. C).

## III.    DISCUSSION

Defendants have removed this case to this court under 28 U.S.C. § 1446, claiming the case could have been brought in this court originally under 28 U.S.C. § 1332.  There is no question that the parties are diverse—Plaintiff is an individual resident of Alabama and Defendants are foreign corporations with their principal places of business in Connecticut or New York.  (Doc. # 1 at 2–3). Thus, all that remains is for Defendant to establish that the amount in controversy exceeds the jurisdictional threshold set forth in 28 U.S.C. § 1332(a).  Plaintiff seeks to remand this case arguing that the amount in controversy is less than $75,000.00.  Specifically, she claims to seek only the monthly payment under the Mediation Agreement of $911.11 [sic] since October 20, 2004, so that the "total number of payments now due is twenty-five (25) which gives a total due of $22,777.75 arrearage." (Doc. # 5 ¶ 6).  However, in the complaint itself Plaintiff alleges a variety of claims and seeks both compensatory and punitive damages (Doc. # 1 Ex. A at 5–11)—not the specified amount of $22,777.75, which has only been asserted in response to the motion to remand.  (Doc. # 5 ¶ 6).

### A.    Plaintiff's Complaint Demands an Amount in Excess of the Jurisdictional Threshold on Its Face.

When a plaintiff specifically claims an amount that is less than the jurisdictional amount in his complaint a removing defendant carries a "heavy burden" and must prove to a "legal certainty" that the plaintiff would exceed $75,000 if he prevailed.  *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).  If the damage request for a particular claim is not specified, the defendant must prove the same by the lower burden of "preponderance of the evidence."  *Id.* at 1096 n.6; *see*

3

*also Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F. Supp. 1213, 1222 (S.D. Ala. 1998) (applying "preponderance of the evidence standard" and finding that amount in controversy requirement was satisfied even though complaint did not specify amount of damages).   This case more neatly fits within the unspecified damages category.  There is no specific *ad damnum* clause in Plaintiff's complaint that concretely alleges a finite amount of damages.  Rather, in count one, Plaintiff makes a  prayer for relief made after reciting the structured settlement amount of $911.11 per month seeking "compensatory and punitive damages."  (Doc. # 1 Ex. A at 6).  Additionally, Plaintiff seeks attorney's fees ("Count Two"), "compensatory and punitive damages" for fraud ("Count Three"), "compensatory and punitive damages" for conversion ("Count Four"), a declaratory judgment that Plaintiff is entitled to all sums due her under the Mediation Agreement ("Count Five"), and an injunction enforcing the terms of the Mediation Agreement ("Count Six").  (Doc. # 1 Ex. A at 6–11).  Therefore, the court finds Defendant must prove, by a preponderance of the evidence, that Plaintiff would recover more than $75,000 if she prevailed.

Count one of the complaint states claims for "Breach of Mediation/Settlement Agreement." This count references the Settlement Agreement, which states in part that "Defendants shall pay to plaintiff the sum of ................... and no/100 Dollars of which $250,000.00 will be paid via a structured settlement."  (Doc. # 1 Ex. A at 13).  Plaintiff further alleges in this count that the Defendants have failed to pay "the agreed upon  $911.11 [sic] monthly payments owed to the Plaintiff . . . pursuant to the 'Settlement Agreement and Release,'" which itemizes the payments due Plaintiff under the Settlement Agreement as follows:

Payee:  Kayla Morris
$911.20 per month for 240 months Certain & Life, level rate, commencing 12-01-2004.
$15,000.00 Lump Sum, guaranteed, payable on 10-29-2009.

5

$25,000.00 Lump Sum, guaranteed, payable on 10-29-2019.
$35,000.00 Lump Sum, guaranteed, payable on 10-29-2029.
$45,000.00 Lump Sum, guaranteed, payable on 10-29-2039.
$55,000.00 Lump Sum, guaranteed, payable on 10-29-2049.

Excluding the lump sum payments specified above, the total amount of monies due Plaintiff in installments is $218,688.00—far in excess of the jurisdictional limit. Thus, it would appear on the face of the complaint that Plaintiff's claims asserted therein far exceed the jurisdictional amount. This is the case because Plaintiff, in her complaint, seeks to enforce the terms of the entire Settlement Agreement. Notwithstanding that fact, Plaintiff now claims in her motion to remand that she is seeking only the monthly payments due thus far under the Mediation Agreement of $911.11 [sic] since October 20, 2004, so that the "total number of payments now due is twenty-five (25) which gives a total due of $22,777.75 arrearage." (Doc. # 5 ¶ 6).

      **B.**    **Plaintiff's Assertion of a Lesser Amount of Damages in Her Motion to Remand Constitutes an Attempt to Amend Her Complaint, and Does Not Divest This Court of Jurisdiction.**

        **1.**    **The Test: Amendment Versus Correction.**

An inquiry into the existence of removal jurisdiction focuses upon the circumstances that exist at the time of removal. *See Poore v. American-Amicable Life Ins. Co. of Texas*, 218 F.3d 1287, 1290 (11th Cir. 2000). "[I]f a district court has subject matter jurisdiction over a diversity action at the time of removal, subsequent acts [which reduce the amount sought by Plaintiff] do not divest the court of its jurisdiction over the action." *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1095 (11th Cir. 2002); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938) ("events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has

attached").  Accordingly, "though . . . the plaintiff after removal, by stipulation, by affidavit, or by amendment of his pleadings, reduces the claim below the requisite [jurisdictional] amount, this does not deprive the district court of jurisdiction."  *Red Cab*, 303 U.S. at 292; *see also Poore*, 218 F.3d at 1290–92 (reversing district court order directing remand based upon post-removal amendment to the complaint reducing the amount in controversy).

Nonetheless, while it is true that a plaintiff may not defeat removal by subsequently changing his damage request, a post-removal affidavit correcting an error in the original complaint, or clearing up an ambiguity in the amount of damages sought by the complaint, is not a reduction in damages, but merely a clarification of the amount of damages sought at the time of removal.  *See Moore v. Toyota Motor Corp.*, 64 F. Supp. 2d 612, 614 (N.D. Miss. 1999).  The distinction is important because when there is only a clarification, the court is still examining the jurisdictional facts as of the time the case is removed even though it has considered information submitted after removal.  *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir.1995) ("under any manner of proof, the jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time")[1]; *Cross v. Bell Helmets, USA*, 927 F. Supp. 209, 214 (E.D. Tex.1996) ("Damage stipulations filed before a federal district court has passed upon its determination of jurisdiction are permissible if they clarify as opposed to amend an original petition.").  As Plaintiff has not submitted a responsive memorandum on the issue of amendment versus clarification or correction, this court must decide for itself whether Plaintiff's

---

[1]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

statement in her motion to remand is an amendment to her original (unspecified) statement of damages or merely a clarification.

> **2.**     **The Nature of the Controversy, Coupled with Plaintiff's Complaint, Reveals Plaintiff Attempted to Amend Her Complaint in the Motion to Remand.**

The answer to that inquiry is evidenced by the language of the motion to remand itself. Plaintiff states: "The total number of $911.11 payments **now** due is twenty-five (25) which gives a total due of $22,777.75 arrearage."  (Doc. # 5 ¶ 6) (emphasis added).  That calculation, of course, was made at the time the motion to remand was filed on November 14, 2006.  A month has passed, and Plaintiff would, undoubtedly, seek December's payment.  If Plaintiff were to obtain a favorable verdict in this case several months from now, Plaintiff would doubtless seek those months as part of the "arrearage."  And, if some unforseen circumstance should arise that would delay the resolution of this case for  almost seven years (the amount of time necessary for the monthly payment "arrearage" to reach the jurisdictional amount, exclusive of the lump sum payment due in 2009), Plaintiff would unquestionably seek this amount as well.  In fact, any genuine resolution of this case must determine if, in fact, the Mediation Agreement and Settlement Agreement are enforceable.  If they are, Plaintiff is due to receive the lump sum payments and total installments (albeit, realizing some of the award in the future), which is $393,688—an amount well above the jurisdictional limit. Therefore, this court concludes that Plaintiff's damage statement in her motion to remand is best characterized as an attempt to amend the damages portion of her complaint.  The amount in controversy in this case is the entire value of the settlement, which, inclusive of the lump sum payments and total installments, is $393,688.00—again, an amount well above the jurisdictional limit.

3.    **The Other Claims in Plaintiff's Complaint are Not Abandoned and Increase Plaintiff's Potential Award.**

Even if the nature of the underlying controversy and the ultimate potential award due Plaintiff were not enough to convince the court that the jurisdictional threshold has been plainly met, Plaintiff has asserted claims for fraud and conversion, which may up the ante.[2]  (Doc. # 1 Ex. A at 6–9).  In her motion to remand, she did not address the viability of these claims or her intent to abandon them, so the court must assume she still intends to pursue them.

In count three, Plaintiff seeks damages for fraud by alleging that Defendants failed to pay the "agreed upon funds to the Plaintiff," which by the terms of the complaint references the deposit of

---

[2]Plaintiff also seeks attorney fees in count two of her complaint, which would also increase the amount in controversy for purposes of jurisdiction.  Specifically, Plaintiff seeks an additional 33 and 1/3 per cent of her recovery attorney fees on behalf of her counsel for "filing this interpleader action for the collection through mediation."  (Doc. # 1 Ex. A at 6).  Although she does not cite any particular rule or statute in her complaint (which would be a necessary prerequisite for the award of attorney fees in this case) it appears that she believes that she filed an interpleader action, and hence is entitled to attorney fees under Alabama statutory law.  ALA. R. CIV. P. 22;  *see also McLeod v. Brown*, 98 So. 470 (Ala. 1923); *Labovitz v. Gulf Am. Fire & Cas. Co.*, 255 So. 2d 592 (Ala. Civ. App. 1971); McGintry, Comment, *Attorneys' Fees as an Element of Damages in Alabama*, 4 ALA. L. REV. 93 (1952).

The court has struggled with determining how this case might qualify as an interpleader action under Alabama law.  Typically, an interpleader action is a suit to determine a right to property or money held by a third party when there is some doubt as to the property's ownership; therefore, a party deposits the property or money with the court so as to permit interested parties to litigate over its ownership.  BLACK'S LAW DICTIONARY 366 (2d pocket ed. 2001).  Notwithstanding its hesitation to consider this case a valid interpleader action (and, therefore, the possibility of Plaintiff's recovering attorney fees for an interpleader action), the court must consider every claim in the complaint on its face for the purposes of determining jurisdiction.  "When a statutory cause of action [such as an interpleader] entitles a party to recover reasonable attorney fees, the amount in controversy includes a consideration of those fees."  *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1079 (11th Cir. 2000) (citing *Missouri State Life Ins. Co. v. Jones*, 290 U.S. 199, 202 (1933); *Premier Indus. Corp. v. Texas Indus. Fastener Co.*, 450 F.2d 444, 447 (5th Cir.1971).  Thus, any attorney fees Plaintiff may successfully obtain as part of any award to her would contribute to the jurisdictional amount.

8

$250,000 as well as the monthly payments.  (Doc. # 1 Ex. A at 7).  Furthermore, Plaintiff again demands judgment against Defendants for compensatory and punitive damages in connection with the alleged fraud.  (Doc. # 1 Ex. A at 8).  "[I]t is clear that in Alabama, when a plaintiff seeks recovery for fraud against an insurance company and asks for punitive damages, the recovery, if the plaintiff prevails, may very well exceed [the jurisdictional amount]." *Bolling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995); *see also Smith v. Franklin Life Insurance Co.*, Civil Action No. 99–D–1081–S at 30–32 (M.D. Ala. June 30, 2000); *Saunders v. Franklin Life Insurance Co.*, Civil Action No. 99–D–1077–S at 17–18 (M.D. Ala. April 27, 2000); *Goree v. Franklin Life Insurance Co.*, Civil Action No. 99–D–986–N at 16–17 (M.D. Ala. April 24, 2000); *Wilder v. Franklin Life Insurance Co.*, Civil Action No. 99–D–1037–E at 15–16 (M.D. Ala. March 27, 2000); *McDuffie v. Franklin Life Insurance* Co., Civil Action No. 99–D–1023–N at 14–15 (M.D. Ala. March 6, 2000); *Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d 1197, 1200 (M.D. Ala. 1999); *Lindsey v. Franklin Life Ins. Co.*, Civil Action No. 99–A–1028–N (M.D. Ala. 1999).  Therefore, any recovery Plaintiff may obtain for her fraud claim would increase the amount in controversy.

In count four, Plaintiff further alleges that the Defendants, in failing to pay the agreed upon monthly payments, have converted monies to their own use and are earning interest on monies due and owing to the Plaintiff.  (Doc. # 1 Ex. A at 8–9). Again Plaintiff claims both compensatory and punitive damages, which must be taken into account when computing the jurisdictional amount.  *See Bell v. Preferred Life Assurance Soc'y,* 320 U.S. 238, 240 (1943).

    **4.**        **Plaintiff Also Seeks Equitable Relief, Which Increases Her Potential Award.**

In count five, Plaintiff states a "Complaint for Declaratory Judgment under Section 6-6-220 et seq Code of Alabama and Other Relief" asking the court to determine that sums are in fact due Plaintiff under the Mediation Agreement (Doc. # 5 at 9–10). Plaintiff makes a claim for both compensatory and punitive damages. (*Id.*). At the same time count six, entitled "Complaint to Enforce Settlement Agreement" seeks both an order enforcing the Mediation and Settlement Agreements and payments due thereunder once they are enforced. "When a plaintiff seeks injunctive or declaratory relief, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. . . . In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1077 (11th Cir. 2000) (citing *Ericsson GE Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218–20 (11th Cir.1997)). Here, the monetary value of the benefit that would flow to Plaintiff if either the injunction to enforce the terms of the Mediation Agreement or the declaratory judgment finding Plaintiff entitled to the sums due thereunder (or both) were granted is clear—Plaintiff would be legally entitled to receive the entire value of the alleged settlement, which, inclusive of the lump sum payments and total installments, is $393,688.00.

11

5.      **Plaintiff Seeks Punitive Damages, Which Must Be Considered in the Calculation of the Amount in Controversy.**

Plaintiff asserts a claim for punitive damages in connection with counts one, three, four, and five. The court must consider these damage claims with respect to any calculation of the amount in controversy.[3]  *See Holley Equipment Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987) ("When determining the jurisdictional amount in diversity cases, punitive damages must be considered, unless it is apparent to a legal certainty that such cannot be recovered.") (citations omitted); *see also Bell*, 320 U.S. at 240 (claims for compensatory and punitive damages should be aggregated to determine jurisdictional amount in controversy); *Wood v. Citronelle-Mobile Gathering Sys. Co.*, 409 F.2d 367, 369 (5th Cir.1968). It is worth reiterating that "it is clear that in Alabama, when a plaintiff seeks recovery for fraud against an insurance company and asks for **punitive damages**, the recovery, if the plaintiff prevails, may very well exceed [the jurisdictional amount]." *Bolling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995) (emphasis added).[4]

---

[3]Professor George Priest of Yale Law School has conducted an "analysis of Alabama jury verdicts of punitive damages against out-of-state insurance companies." *Davis v. Franklin Life Ins. Co.*, 71 F. Supp. 2d 1197, 1199 (M.D. Ala. Nov. 2, 1999). In his analysis, Professor Priest "concluded that, even after *BMW v. Gore*, the average punitive damage award affirmed by the Alabama Supreme Court is $874,667." *Id.*; *see also Jackson v. American Bankers Insurance Co. of Fla.*, 976 F. Supp. at 1452 (citing similar earlier analysis by Professor Priest).

[4]In determining whether the jurisdictional level has been met, the court may also look for guidance to recent decisions rendered in cases on the same type of suit. *Bolling*, 900 F. Supp. at 404. In *Bolling*, the court held the amount in controversy requirement had been met even where the plaintiff had not specified a damage amount when the defendant presented the court with numerous decisions from the Alabama courts in which the fraud action yielded liability of greater than $75,000, despite the plaintiff having had slight out-of-pocket or actual damages.  *See generally Jackson v. Am. Bankers Ins. Co. of Fla.*, 976 F. Supp. 1450, 1452 (S.D. Ala. 1997). Defendants have attached a list of recorded Alabama verdicts in excess of $75,000 against insurance companies for fraud. (Doc. # 10 Ex. A).  This list only bolsters this court's conclusion that the motion to remand is due to be denied, as it appears the claims for punitive damages, in addition to compensatory damages, exceed the amount in controversy.

IV.     **CONCLUSION**

For the reasons discussed above, the court finds Plaintiff's Motion to Remand to the Circuit Court of Etowah County, Alabama is due to be denied.  A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____31st_____ day of January, 2007.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

13